# IN THE SUPREME COURT OF IOWA

No. 14–1280

Filed October 23, 2015

**STATE OF IOWA,**

Appellee,

vs.

**DANIEL LOGAN WALDEN,**

Appellant.

---

Appeal from the Iowa District Court for Mills County, James M. Richardson, Judge.

Defendant appeals from order denying motion to dismiss kidnapping charge as time-barred. **DISTRICT COURT ORDER REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Jesse A. Macro Jr. of Gaudineer & George, L.L.P., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, Eric Hansen, County Attorney, and Tricia McSorley, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide which statute of limitations governs a charge of kidnapping to commit sexual abuse of a minor under Iowa Code section 710.2 (2007), a class "A" felony with a mandatory sentence of life in prison. In 2014, a teenage girl reported the defendant had locked her in his bedroom and molested her eight years earlier when she was six years old. He was arrested the day after her forensic interview and charged with two counts of sexual abuse of a minor, indecent contact with a minor, and kidnapping with intent to commit sexual abuse. Defendant moved to dismiss the kidnapping charge as time-barred under the general three-year statute of limitations for felonies, Iowa Code section 802.3, noting kidnapping is not one of its enumerated exceptions. The State resisted, arguing the applicable statute of limitations is section 802.2, an enumerated exception that expires ten years after the minor victim of sexual abuse reaches age eighteen. The State noted sexual abuse of a minor is a lesser included offense for the kidnapping charge and contended it would be absurd to apply a shorter deadline to the more serious crime of kidnapping to commit that abuse. The district court agreed with the State and denied the motion to dismiss. We granted the defendant's application for discretionary review.

We must apply the unambiguous operative statutory language as written. The legislature, recognizing child sex-abuse victims often delay reporting such crimes, listed four exceptions to the three-year limitations provision. But the legislature did not include kidnapping among those exceptions. Accordingly, under the plain meaning of the statutory text, the kidnapping charge is time-barred. We decline the State's invitation to apply the absurd-results doctrine to effectively rewrite the statute. The legislature made the policy choice to leave the three-year limitations

intact for first-degree kidnapping. For the reasons further explained below, we reverse the district court's order on the motion to dismiss and remand the case to proceed under the remaining charges, including the lesser included offense of sexual abuse of a minor.

## I. Background Facts and Proceedings.

In February 2014, concerned parents sent their troubled fourteen-year-old daughter, K.R., to an inpatient treatment center to address her self-harming behavior, suicidal thoughts, and drug use. While in counseling, K.R. told her therapist that she had been sexually abused as a child by a neighbor, Daniel Walden. During group therapy, K.R.'s parents heard K.R. announce she had been molested by a "neighbor." When they asked if it was Walden, she nodded "yes." The parents contacted the Glenwood police, who recommended that K.R. undergo a forensic interview. That interview occurred on May 8.

K.R. told her interviewer Walden had sexually abused her when she was about six years old. K.R. said she often bicycled around the cul-de-sac near her house, and Walden watched her. In 2006 or 2007, during a warm part of the year when K.R. was in first grade, Walden invited her into his house "to see puppies." According to the minutes of testimony, she told the interviewer that Walden locked her in his bedroom, touched her private parts, and made her touch his. He ordered her not to tell anyone. She complied and kept this secret for eight years.

K.R. never told anyone about Walden molesting her until 2014. K.R. first told a close friend shortly before she began therapy. She later told another friend, then her therapist and parents. She disclosed specific details in her May 8 forensic interview and diagrammed the interior of Walden's home.

Based on her statements, on May 9, Glenwood police executed a search warrant on Walden's home and arrested him. The interior room layout of Walden's home, the wall color, and furniture placement in his bedroom generally fit K.R.'s description. The search of his home found pornographic images of young girls, "little girl undergarments," and stuffed animals posed in sexual positions. Walden was taken into custody, given *Miranda* warnings, and interrogated.

Walden denied molesting K.R. or touching her inappropriately. Walden initially denied ever having children in his home but then said K.R. had been inside his house twice. The first time, she was injured falling off a teeter-totter and came to his wife, a physician, for assistance. Walden claimed his wife examined K.R. in the master bedroom. The second time, he said she came inside the house to sell lemonade. K.R.'s parents denied K.R. had ever been inside Walden's home to sell lemonade but recalled Walden's wife treating K.R.'s scrapes in Walden's living room, not the bedroom.

On May 20, Walden was charged by trial information with one count of kidnapping in the first degree, two counts of sexual abuse in the second degree, and one count of indecent contact with a child. Each count was based on Walden's alleged molestation of K.R. at his home in 2006 or 2007.

On June 17, Walden filed a motion to dismiss the kidnapping charge as barred by the statute of limitations. The State filed a resistance. The district court held a hearing on July 7 and denied the motion the same day. The district court ruled the statute of limitations would expire ten years after K.R. turned eighteen because K.R. was a minor at the time of the abuse and one of the sexual abuse charges would merge with the kidnapping if Walden were convicted of both. On

August 6, Walden filed an application for discretionary review, which we granted to decide the governing statute of limitations.

## II. Standard of Review.

The sole issue on appeal is a question of law—determining the applicable statute of limitations for the charge of first-degree kidnapping with intent to subject K.R., a minor, to sexual abuse. We review questions of statutory interpretation for correction of errors of law. *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013).

## III. Analysis.

Walden allegedly kidnapped K.R. eight years before he was charged with the crime. We must decide whether the district court erred by ruling the applicable statute of limitations is Iowa Code section 802.2 rather than 802.3. This is a question of first impression. Walden argues the three-year general limitation period for felonies in section 802.3 controls because kidnapping is not among its enumerated exceptions. The State argues that because Walden is charged with kidnapping with intent to subject K.R. to sexual abuse while she was a minor, the district court correctly applied an enumerated exception to section 802.3—the extended limitations period in section 802.2 that expressly allows the State to charge the crime of sexual abuse of a minor up to ten years after the victim reaches age eighteen. We read the interrelated statutes together and conclude that the longer limitations period does not apply to kidnapping.

We begin our analysis with general principles before focusing on the statutory text at issue. "A statute of limitations is designed to prevent fraudulent and stale actions from arising after a great lapse of time while still preserving the right to pursue a claim for a reasonable period of time." *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985). The

United States Supreme Court elaborated that the purpose of a criminal statute of limitations

> is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.

*Toussie v. United States*, 397 U.S. 112, 114–15, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161 (1970);[1] *see also* James Herbie DiFonzo, *In Praise of Statutes of Limitations in Sex Offense Cases*, 41 Hous. L. Rev. 1205, 1209 (2004) (" 'The primary reasons for restrictions of time revolve around universally accepted notions that prompt investigation and prosecution insures that conviction or acquittal is a reliable result, and not the product of faded memory or unavailable evidence; that ancient wrongs ought not to be resurrected except in some cases of concealment of the offense or identity of the offender; and that community security and economy in allocation of enforcement resources require that most effort be concentrated on recent wrongs.' " (quoting 1 *Working Papers of the National Commission on Reform of Federal Criminal Laws* 281 (1970))).

The *Toussie* Court recognized "the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." 397 U.S. at 115, 90 S. Ct. at 860, 25 L. Ed. 2d at 161 (internal quotation marks omitted). We apply the same principle. *See State v. Francois*, 577

---

[1] The *Toussie* Court noted statutory deadlines also "have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." 397 U.S. at 115, 90 S. Ct. at 860, 25 L. Ed. 2d at 161. The Glenwood police arrested Walden the day after K.R. provided the forensic interviewer with details of the crime.

N.W.2d 417, 418 (Iowa 1998) (" '[C]riminal limitations statutes are to be liberally interpreted in favor of repose.' " (quoting *State v. Harrison*, 561 N.W.2d 28, 29 (Iowa 1997))); *see also Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011) (" '[W]e have repeatedly stated that provisions establishing the scope of criminal liability are to be strictly construed with doubts resolved therein in favor of the accused.' " (quoting *State v. Hearn*, 797 N.W.2d 577, 583 (Iowa 2011))), *superseded by statutory amendment*, 2012 Iowa Acts ch. 1138, § 91 (codified at Iowa Code § 907.3 (2013); 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 58:4, at 120 (7th rev. ed. 2008)) [hereinafter *Sutherland Statutory Construction*] ("Statutes which impinge on fundamental freedoms are strictly construed.").

Against this backdrop, we turn to the language of the Iowa statutes of limitations at issue. *See Hearn*, 797 N.W.2d at 583 ("The starting point of interpreting a statute is analysis of the language chosen by the legislature."). Our legislature chose to enact a general three-year statute of limitations applicable to most felonies with several enumerated exceptions.[2] This statute in 2007 provided "[i]n all cases, except those enumerated in section 802.1, 802.2, 802.2A, or 802.10, an indictment or information for a felony or aggravated or serious misdemeanor shall be found within three years after its commission." Iowa Code § 802.3.[3] The

---

[2]The Model Penal Code also contains a general three-year statute of limitations for felonies with exceptions for murder, first-degree felonies, misdemeanors, fraud, and misconduct by a public officer. Model Penal Code § 1.06, 10A U.L.A. 31–32 (2001). The first-degree felony exception increases the statute of limitations to six years after its commission. *Id.* § 1.06(2)(a), 10A U.L.A. at 31.

[3]We apply the 2007 Code because Walden's alleged crimes occurred between 2006 and 2007. Another enumerated exception to section 802.3, section 802.2B, was enacted in 2014. *See* 2014 Iowa Acts ch. 1097, § 8. The State does not argue section 802.2B applies to Walden. *See Stogner v. California*, 539 U.S. 607, 609, 123 S. Ct. 2446, 2448, 156 L. Ed. 2d 544, 550 (2003) (holding the Ex Post Facto Clause precludes

word "enumerate" means "to ascertain the number of"; "to relate one after another." *Webster's Third New International Dictionary* 759 (unabr. ed. 2002). Under the plain meaning of section 802.3, first-degree kidnapping, a felony, is subject to the general three-year statute of limitations unless it falls within one of the enumerated exceptions.

Significantly, the exceptions enumerated in section 802.3 do not include kidnapping. Walden argues that omission is dispositive. We agree. Legislative "[i]ntent may be expressed by the omission, as well as the inclusion, of statutory terms. Put another way, the express mention of one thing implies the exclusion of other things not specifically mentioned." *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001) (citation omitted). If the legislature had intended a longer limitations period for kidnapping, it would have included that crime among the enumerated exceptions to the three-year general provision in section 802.3. The legislature did not include kidnapping among the exceptions as it did for various other crimes, including murder. *See* Iowa Code § 802.1 ("A prosecution for murder in the first or second degree may be commenced any time after the death of the victim.").

The State, however, contends one of section 802.3's enumerated exceptions, section 802.2,[4] is ambiguous and should be interpreted to encompass kidnapping with intent to subject the victim, a minor, to

_____

a new statute of limitations from reviving criminal liability for otherwise time-barred claims).

[4]The parties agree the other enumerated exceptions in the 2007 statute are inapplicable. As noted, section 802.1 applies to murder. Iowa Code § 802.1. Section 802.2A applies to incest as well as sexual exploitation by a counselor, therapist, or school employee. *Id.* § 802.2A. Walden is unrelated to K.R. and was not a counselor, therapist, or school employee. Section 802.10 addresses charges based on the DNA profile of the accused. *Id.* § 802.10. This case does not involve DNA evidence.

sexual abuse. We conclude the statute is unambiguous. Section 802.2(1) provides in relevant part:

> An information or indictment for sexual abuse in the first, second, or third degree committed on or with a person who is under the age of eighteen years shall be found within ten years after the person upon whom the offense is committed attains eighteen years of age . . . .

Iowa Code § 802.2(1). The State correctly notes the purpose behind section 802.2 is to "accommodate the reality that many children delay [the] reporting of sexual abuse." *See, e.g.*, *State v. Dudley*, 856 N.W.2d 668, 675–76 (Iowa 2014) (citing Veronica Serrato, Note, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U. L. Rev. 155, 160–63 (1988) (discussing use of expert testimony to explain delayed reporting by child abuse victims)); *Callahan v. State*, 464 N.W.2d 268, 271–72 (Iowa 1990) (discussing delayed reporting resulting from posttraumatic stress disorder); Lynne Henderson, *Without Narrative: Child Sexual Abuse*, 4 Va. J. Soc. Pol'y & L. 479, 528 (1997); Roland C. Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177, 177–78 (1983).

The plain meaning of section 802.2(1) thus allows the State to prosecute certain crimes of sexual abuse of a minor within ten years of the victim attaining the age of eighteen. It does not follow that the extended limitations period in section 802.2(1) applies to *kidnapping* to commit sexual abuse of a minor. We reject the State's argument that an indictment for *kidnapping* to commit sexual abuse of a minor equates to an "indictment for sexual abuse." The State correctly observes that second-degree sexual abuse is a lesser included offense of kidnapping. *See State v. Whitfield*, 315 N.W.2d 753, 755 (Iowa 1982). But Walden was charged with first-degree kidnapping, which carries a life sentence

and requires proof of the additional element of confinement or removal from one place to another. *See State v. Robinson*, 859 N.W.2d 464, 474–75 (Iowa 2015). *Compare* Iowa Code § 710.1(3), *with id.* §§ 709.1–.4. Those differences preclude us from equating first-degree kidnapping with second-degree sexual assault for the purpose of extending the statute of limitations.

The kidnapping statute provides in relevant part:

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
>
> . . . .
>
> 3. The intent to . . . subject the person to a sexual abuse.

Iowa Code § 710.1(3). First-degree kidnapping occurs "when the person kidnapped, as a consequence of the kidnapping . . . is intentionally subjected to . . . sexual abuse." *Id.* § 710.2. First-degree kidnapping is a class "A" felony carrying a mandatory prison sentence of life without parole. *Id.*; *id.* § 902.1(1). By contrast, second-degree sexual abuse is a class "B" felony punishable by an indeterminate prison sentence of up to twenty-five years followed by a lifetime special sentence that places the offender under the department of correction's supervision for life. *See id.* § 709.3(3); *id.* § 902.9; *id.* § 903B.1.[5]

Our court recently revisited the relationship between sexual abuse and kidnapping in *Robinson*. In that case, the defendant, convicted of kidnapping to commit sexual abuse, challenged the sufficiency of the

---

[5]The special sentence begins at the termination of the prison sentence, and the offender begins the sentence "under supervision as if on parole." Iowa Code § 903B.1.

evidence for the element of confinement or removal. *Robinson*, 859 N.W.2d at 466–67. Robinson dragged the victim from the hallway into the bedroom, locked the bedroom and apartment doors, covered the victim's mouth, and took the victim's cell phone. *Id.* at 466. In addressing the legislative intent behind the kidnapping statute, we reiterated "oft quoted" language requiring evidence of confinement or removal beyond that incidental to a sexual assault:

> "[O]ur legislature, in enacting section 710.1, intended the terms 'confines' and 'removes' to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. . . . Such confinement or removal may exist because it *substantially* increases the risk of harm to the victim, *significantly* lessens the risk of detection, or *significantly* facilitates escape following the consummation of the offense."

*Id.* at 475 (quoting *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981)). We reaffirmed that the State must show more than incidental confinement or removal to prove kidnapping:

> We recognize[] every assault, rape, and robbery involves some act of intentional confinement or movement. We reason[] notwithstanding the unqualified language in Iowa Code section 710.1(3), the legislature did not intend to give the prosecution a choice of two penalties of such a disparate nature for sexual abuse. We note[] under Iowa law a conviction of first-degree kidnapping [is] punishable by life in prison, while third-degree sexual abuse [is] punishable by no more than ten years in prison. . . . We . . . conclude[] the legislature intended that the kidnapping statute be applicable only in situations in which the "confinement or removal definitely exceeds that which is merely incidental to the commission of sexual abuse."

*Id.* (citations omitted) (quoting *Rich*, 305 N.W.2d at 745). Applying *Rich*, we found insufficient evidence to uphold Robinson's conviction for kidnapping. *Id.* at 481–82. Although Robinson had committed sexual

abuse, we found the State had failed to prove the removal or confinement required for kidnapping. *Id.* at 478–82. "We note[d] in particular the potential of sliding downhill into situations in which a person with limited additional criminal culpability suffers a dramatically increased penalty." *Id.* at 482.

As *Robinson* illustrates, proof of sexual abuse alone is insufficient to support a conviction for kidnapping. Accordingly, an indictment for sexual abuse of a minor cannot be equated for limitations purposes to an indictment for *kidnapping* to commit that abuse.

The State next argues Walden's literal interpretation of section 802.2 leads to an "absurd" result that a shorter statute of limitations governs the more serious offense of kidnapping than its lesser included offense of sexual abuse. The State argues we should apply the absurd-results doctrine to construe section 802.2 as encompassing kidnapping. In *Sherwin-Williams Co. v. Iowa Department of Revenue*, we explained that " 'even in the absence of statutory ambiguity, departure from literal construction is justified when such construction . . . would produce an absurd and unjust result and the literal construction is clearly inconsistent with the purposes and policies of the act.' " 789 N.W.2d 417, 427 (Iowa 2010) (quoting *Pac. Ins. Co. v. Or. Auto. Ins. Co.*, 490 P.2d 899, 901 (Haw. 1971)). However, we cautioned that " 'the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said.' " *Id.* (quoting 2A *Sutherland Statutory Construction* § 45:12, at 105–07 (7th ed. 2007)). Consistent with that admonition, we declined to invoke the absurd-results doctrine in *Sherwin-Williams* when the plain language of the statute allowed a retailer who mixed paints on-site to claim a

manufacturer's tax credit. *Id.* at 427–28. In *Anderson*, we declined to apply the absurd-results doctrine when the plain language of the statute led to the "counterintuitive" outcome that an offender received day-for-day credit against his prison sentence for the time he spent living at home under electronic monitoring. 801 N.W.2d at 7–8.

In this case, we again decline to apply the absurd-results doctrine. We refuse to speculate the legislature intended something other than the literal meaning of the language it chose for sections 802.2 and 802.3. We cannot say the outcome here is absurd. To the contrary, the legislature, quite reasonably, could have intended that Iowans facing life prison terms for kidnapping should be subject to the same three-year statute of limitations as most other accused felons.[6] *See Robinson*, 859 N.W.2d at 475 ("[W]e doubt[] the legislature intended the possibility of life in prison to apply to the 'usual' case of sexual abuse, in which some movement or confinement occurs. . . . [S]uch a literal interpretation of the statute 'would not be sensible or just.' " (quoting *Rich*, 305 N.W.2d at 745)).

**IV. Disposition.**

For these reasons, we reverse the district court's order that denied Walden's motion to dismiss and remand the case for an order dismissing the charge of first-degree kidnapping as time-barred. The prosecution may proceed on the remaining counts of sexual abuse in the second

---

[6]The State does not argue a discovery rule applies to this case. The legislature codified a discovery rule for fraud cases in Iowa Code section 802.5. In *State v. Wilson*, we declined to extend that discovery rule to a charge of theft by taking because the element of fraud was missing. 573 N.W.2d 248, 251–52 (Iowa 1998).

degree and indecent contact with a child, including the lesser included offense in count I.

**DISTRICT COURT ORDER REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**